**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Ernest RIZZO, Defendant-Appellant.**

**No. 77–1841.**

United States Court of Appeals,
Seventh Circuit.

Argued April 26, 1978.
Decided Sept. 1, 1978.

Rehearing and Rehearing En Banc
Denied Oct. 6, 1978.

18 U.S.C. §§ 2510–2520, to the activities of a private investigator in gathering evidence of marital infidelity. Specifically, we must decide whether these provisions apply to the investigator's interception in the marital home, at the instigation or with the participation of one spouse, of communications between the other spouse and a third party. The second issue is the lawfulness of a warrantless seizure of a tape cassette. We decide these issues in this opinion and others in an unpublished order and affirm the conviction under the criminal penalty provisions of the Act, 18 U.S.C. § 2511(1).

I.

Defendant Ernest Rizzo, who is licensed as a private investigator in Illinois, was employed by several persons to investigate and gather evidence of suspected marital infidelities. The evidence establishes that in carrying out these engagements Rizzo, with the aid of wiretapping and electronic eavesdropping equipment, actually intercepted or endeavored to intercept conversations between spouses of the clients and third parties. In most instances the interception or attempted interception occurred with the knowledge and consent and sometimes the assistance of the client-spouse within the home where both spouses were residing at the time. Rizzo argues that § 2511(1) does not apply to interceptions by spouses within the marital home and that he shares in the spousal immunity.

Section 2511(1)(a) provides that, with exceptions concededly not applicable here,

> Any person who—
> (a) willfully intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any wire or oral communication;
>
> .     .     .     .     .
>
> shall be fined not more than $10,000 or imprisoned not more than five years, or both.

Under the definitional section of the Act, 18 U.S.C. § 2510, wire communications include

Jerome Rotenberg, Chicago, Ill., for defendant-appellant.

Candice Fabri, Asst. U. S. Atty., Chicago, Ill., for plaintiff-appellee.

Before SWYGERT, Circuit Judge, MILLER, Associate Judge,* and TONE, Circuit Judge.

TONE, Circuit Judge.

The first issue to which this opinion is addressed concerns the applicability of the wire interception provisions of the Omnibus Crime Control and Safe Streets Act of 1968,

* The Honorable Jack R. Miller, Associate Judge of the United States Court of Customs and Patent Appeals, sitting by designation.

telephone transmissions (§ 2510(1)), and "intercept" and "electronic, mechanical, or other device" are defined as follows:

(4) 'intercept' means the aural acquisition of the contents of any wire or oral communication through the use of any electronic, mechanical, or other device.

(5) 'electronic, mechanical, or other device' means any device or apparatus which can be used to intercept a wire or oral communication other than—

(a) any telephone or telegraph instrument, equipment or facility, or any component thereof, (i) furnished to the subscriber or user by a communications common carrier in the ordinary course of its business and being used by the subscriber or user in the ordinary course of its business; . . . .

The Fifth and Sixth Circuits have taken different views of the applicability of § 2511(1) to interceptions by the spouse within the marital home. *Simpson v. Simpson,* 490 F.2d 803 (5th Cir.), *cert. denied,* 419 U.S. 897, 95 S.Ct. 176, 42 L.Ed.2d 141 (1974); *United States v. Jones,* 542 F.2d 661 (6th Cir. 1976). *Simpson* was a civil action by the wife against the husband pursuant to the civil liability provision of the Act, 18 U.S.C. § 2520. The husband had attached a device for tapping and recording telephone conversations to telephone lines within the marital home and by that means had intercepted conversations between his wife and another man. The Fifth Circuit held that § 2511(1) did not apply under these circumstances. The court was careful, however, to limit its holding to interceptions made by the spouse. In discussing the legislative history of the statute, Judge Bell, speaking for the court, referred to the "minor portion" of the testimony at the lengthy legislative hearings that related to wiretapping in a domestic relations context and said,

It should be noted that the concerns and information in these passages are primarily directed toward the involvement of private investigators in marital conflicts. Indeed, where appellant seeking to recover from a third party, we could not, on the basis of this legislative history, accept the defense that the interceptions were authorized by the husband. However, to

our minds a third-party intrusion into the marital home, even if instigated by one spouse, is an offense against a spouse's privacy of a much greater magnitude than is personal surveillance by the other spouse. The latter, it seems to us, is consistent with whatever expectations of privacy spouses might have vis-a-vis each other within the marital home.

490 F.2d 808–809. (Footnotes omitted.)

In *Jones,* a criminal prosecution under § 2511(1), the defendant had used an electronic device to intercept telephone calls between his estranged wife and another man. The installation of the device had occurred several months after the husband had moved out of the marital home and while he was under a restraining order issued by a state court prohibiting him from "coming about" his wife, although apparently, or so the court appeared to assume, while he was lawfully present on the premises as a babysitter for the children of the marriage. The court, speaking through Judge Celebrezze, first disagreed with the interpretation given the statute by the Fifth Circuit in *Simpson,* reviewing the legislative history as Judge Bell had done in *Simpson,* reaching the conclusion that Congress had not indicated any intention to exclude spouses from the coverage of § 2511, and holding that therefore they were included. Then, however, the court stated what appears to be an alternative ground for decision, *viz.,* that *Simpson* was distinguishable on its facts because Mr. and Mrs. Jones were not sharing a domicile at the time of the interception. 542 F.2d at 673.

In the case at bar, we need not choose between the interpretations given the statute in *Simpson* and in *Jones.* We assume, without deciding, that *Simpson* was correctly decided and yet affirm Rizzo's conviction. The court in *Simpson* carefully limited its decision to interceptions made by the spouse and indicated that it would have taken a different view of "a third-party intrusion into the marital home, even if instigated by one spouse." That is of course what occurred here. In each instance covered by a count of the indictment, Rizzo either installed the electronic device

or procured the spouse to install the device, *i. e.*, gave her the device, told her to install it, and instructed her how to install it. His conduct was covered by the language of § 2511(1). Whatever may be said of the absence of any indication in the legislative history of an intention to make the statute applicable to the conduct of family members within the family household, *see Simpson*, 490 F.2d at 808 n. 14, and *Anonymous v. Anonymous*, 558 F.2d 677 (2d Cir. 1977), there is nothing in that history to suggest that Congress did not intend to cover third parties, and in particular private investigators. In fact, there are indications that, whatever Congress intended with respect to spouses, it recognized that it would be covering private investigators involved in marital disputes. *See Jones*, 542 F.2d at 669, including nn. 14–16. Accordingly, we conclude that there is no implied derivative spousal immunity in favor of a private investigator who, in the words of the statute, "willfully intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any wire . . . communication."

## II.

Upon obtaining a valid warrant to search Rizzo's car, FBI agents went to the vicinity of the apartment building in which one of Rizzo's clients resided, where the car was parked in the street. Shortly after they had searched the car Rizzo came out of the building carrying a tape cassette, which was visible to the FBI agents when they saw him. Although they did not arrest him, they forcibly took the cassette from him. He argues that this seizure violated the Fourth Amendment.

The search warrant is of no help to the government in justifying the seizure, because it authorized only a search of Rizzo's car and not his person. The question therefore is whether, independent of the search warrant, the agents were justified in seizing the cassette.

We conclude that the seizure was lawful. The agents did not know Rizzo would appear when they came to search his car, and the sight of him carrying the cassette was thus unanticipated. They had

information that he was engaged in unlawful wiretapping activities in the building from which they saw him emerge. This provided a reasonable basis for believing that the cassette he was carrying was being or had been used in those activities. It was in plain view of the agents at a place where they had a right and a legitimate reason to be. *Cf. Coolidge v. New Hampshire*, 403 U.S. 443, 465–474, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971). If they had deferred seizing it until they had obtained a warrant for its seizure, it would surely have been erased or secreted. There was thus an exigent circumstance. Making a formal arrest without a warrant prior to seizing the cassette was not required. *Cf. Cupp v. Murphy*, 412 U.S. 291, 295–296, 93 S.Ct. 2000, 36 L.Ed.2d 900 (1973).

The many other arguments made by Rizzo are dealt with in an unpublished order issued this day, because our rulings upon them do not meet the criteria for publication stated in Circuit Rule 35. For the reasons stated above and in that order, the judgment of conviction is affirmed.

AFFIRMED.