**June E. PERFIT, Plaintiff,**

v.

**Martin J. PERFIT, Defendant.**

**No. CV 83–7916 AHS.**

United States District Court,
C.D. California.

Aug. 25, 1988.

Paul M. Hittelman, Hittelman & Pritikin, Los Angeles, Cal., for plaintiff.

Robert D. Brill, Bonne, Jones, Bridges, Mueller, O'Keefe & Hunt, Los Angeles, Cal., Jerry Miller, Schulman & Miller, Beverly Hills, Cal., for defendant.

## OPINION ON ORDER GRANTING DIRECTED VERDICT IN FAVOR OF DEFENDANT

STOTLER, District Judge.

Plaintiff June E. Perfit brought this action seeking damages under Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. §§ 2510–2520, on the basis of defendant Martin J. Perfit's installation of a recording device on a telephone in the marital home. A jury trial commenced on May 24, 1988. At the conclusion of plaintiff's case completed by an offer of proof, the Court granted a directed verdict in favor of defendant for the reasons set forth below.

## FACTS AND PROCEDURAL BACKGROUND

Plaintiff and defendant were wife and husband. On or about August 30, 1983, plaintiff filed a petition for legal separation in Superior Court for the County of Los Angeles. The petition was subsequently amended to request dissolution of the marriage. After a three-week trial in April 1985, the Superior Court entered a judgment of dissolution of marriage on October 16, 1985. During the pendency of the dissolution proceedings, and throughout this entire action, the parties continued to reside together in their expansive marital home.

During the period following the filing of the petition for legal separation, defendant claimed that he was not receiving all his phone messages left at the home by his attorney and business associates. Supposedly to remedy this problem, in November 1983 he purchased and installed a voice-activated recording device on the telephone in a bedroom formerly occupied by one of the couple's children.

On or about November 22 or 23, 1983, plaintiff discovered the tape recorder and disconnected the unit. She removed a tape from the unit on which certain telephone conversations had been recorded. Plaintiff preserved both for use as evidence.

As a result of defendant's actions, plaintiff instituted this action on December 6, 1983. She alleged that defendant intercepted oral communications in violation of 18 U.S.C. § 2511, and invoked this Court's jurisdiction under 18 U.S.C. § 2520. Plaintiff added pendent state claims for invasion of privacy, intentional infliction of emotional distress, and negligent infliction of emotional distress. She sought relief in the form of compensatory and exemplary damages for all claims, and liquidated damages pursuant to 18 U.S.C. § 2520. Both parties filed jury demands.

Trial was initially scheduled to begin in July 1984, but was continued numerous times at the request of both parties as well as by the Court. On October 23, 1987, the Court dismissed the pendent state claims on its own motion following the issuance of an order to show cause and responses thereto.

On December 2, 1987, defendant filed a motion to dismiss the remaining claim for interception of oral communications on the basis that Title III does not apply to this case. Because the decisions of the Courts of Appeals are not uniform on the issue of the applicability of 18 U.S.C. § 2511 to electronic surveillance between spouses, because no Ninth Circuit opinion had been issued on the subject, and because the factual context might better frame the issue, the Court denied the motion.

Trial commenced on May 24, 1988. During plaintiff's testimony the jury listened to the tape which plaintiff removed from the recording device when she discovered it. Approximately six conversations were recorded on the tape. Plaintiff participated in none of the recorded conversations.

At the conclusion of plaintiff's testimony, defendant again moved for dismissal of the

action. The Court took the motion under submission, and the next morning requested that plaintiff set forth the remainder of her case through an offer of proof outside the presence of the jury. Following the offer of proof, the Court granted defendant's motion as one for a directed verdict, and excused the jury. Judgment was entered on May 31, 1988.

## DISCUSSION

### I.

### *Motion for Directed Verdict*

■ Defendant made an oral motion for involuntary dismissal under Fed.R.Civ.P. 41(b). Although Rule 41(b) applies only to non-jury cases, the Court may treat the motion for dismissal as a motion for a directed verdict under Rule 50(a). *Johnson v. Chicago, Milwaukee, St. Paul & Pacific Railroad Co.*, 400 F.2d 968, 970 n. 1 (9th Cir.1968). While it is preferable that a motion for directed verdict be made in writing, the Court may consider an oral motion made during the course of a hearing or trial. *U.S. Industries, Inc. v. Semco Manufacturing, Inc.*, 562 F.2d 1061, 1065 (8th Cir.), *cert. denied,* 434 U.S. 986, 98 S.Ct. 613, 54 L.Ed.2d 480 (1977).

A directed verdict is proper when the evidence allows only one reasonable conclusion as to the verdict. *Lew v. Moss,* 797 F.2d 747, 752 (9th Cir.1986). It is not proper if there is substantial evidence supporting a verdict in favor of the non-moving party. To determine whether there is substantial evidence to support such a finding, the Court must examine all evidence in the light most favorable to the non-moving party and draw all reasonable inferences in favor of that party. *Id.*

It is within the power of the Court to "direct a verdict at any point in the trial where it is apparent that there is a complete absence of any question to send to the jury." *United States v. Vahlco Corp.,* 720 F.2d 885, 889 (5th Cir.1983), citing *Best v. District of Columbia,* 291 U.S. 411, 54 S.Ct. 487, 78 L.Ed. 882 (1934). Accordingly, the Court has inherent power to grant a directed verdict at any time during trial. *Oliver v. Southern Railway Co.,* 475 F.2d 895, 897 (D.C.Cir.1972), citing *Best v. District of Columbia,* 291 U.S. 411, 54 S.Ct. 487, 78 L.Ed. 882. It was therefore appropriate to consider and grant a directed verdict at the close of plaintiff's case, albeit completed through an offer of proof.

### II.

### *Applicability of 18 U.S.C. §§ 2510–2520*

The Court based its grant of a directed verdict on two grounds: (1) that the wiretap statute did not apply to the facts of this case, and (2) that even if the statute applied, the evidence did not support a reasonable inference that the statute had been violated.

■ The provisions of 18 U.S.C. § 2511[1] prohibit, with certain stated exceptions, the interception and disclosure of wire and oral communications.[2] Pursuant to 18 U.S.C.

---

1. Title 18 U.S.C. § 2511 (West Supp.1988) provides in part:
 "(1) Except as otherwise specifically provided in this chapter any person who—
 (a) intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication;
 (b) intentionally uses, endeavors to use, or procures any other person to use or endeavor to use any electronic, mechanical, or other device to intercept any oral communication when—
 (i) such device is affixed to, or otherwise transmits a signal through, a wire, cable, or other like connection used in wire communication; ... shall be punished as provided in subsection (4) or shall be subject to suit as provided in subsection (5)."

2. Title 18 U.S.C. § 2510 (West Supp.1988) provides in part:
 "As used in this chapter—
 (1) 'wire communication' means any aural transfer made in whole or in part through the use of facilities for the transmission of communications by the aid of wire, cable, or other like connection between the point of origin and the point of reception ...
 (2) 'oral communication' means any oral communication uttered by a person exhibiting an expectation that such communication is not subject to interception under circumstances justifying such expectation, but such term does not include any electronic communication; ...
 (4) 'intercept' means the aural or other acquisition of the contents of any wire, electronic, or

§ 2520,[3] a person whose communications are intercepted, disclosed, or used in violation of Title III may bring a civil action for damages. The principal issue here is whether Title III creates civil liability where one spouse installs a recording device on a telephone in the mutually occupied marital home without the other spouse's knowledge or consent.

The Ninth Circuit has rendered no opinion on the issue, while the Courts of Appeals which have considered the applicability of Title III to actions between spouses are split. The Fifth Circuit first examined the question in *Simpson v. Simpson,* 490 F.2d 803 (5th Cir.), *cert. denied,* 419 U.S. 897, 95 S.Ct. 176, 42 L.Ed.2d 141 (1974). In *Simpson,* the couple was residing together in the marital home at the time the husband attached a recording device to the phone lines in the home for the purpose of intercepting conversations between his wife and another man.

While conceding that the naked language of Title III applied, the *Simpson* court opined that "Congress did not intend such a far-reaching result, one extending into areas normally left to states, those of marital home and domestic conflicts." *Id.* at 805. After an exhaustive search of the legislative history of Title III, the court found no conclusive evidence that Congress intended the statute to invade and regulate the marital relationship within the marital home. Given such inconclusive legislative history, the court focused on two others factors in reaching its decision. First, the court observed that Congress specifically excepted interception of a conversation through the use of an extension phone within the family home. *See* 18 U.S.C. § 2510(5)(a)(i).[4] The *Simpson* court failed to see a difference between the overhear achieved by listening on an extension and that achieved by the husband's act. Second, in view of Title III's criminal sanctions, the court was guided by the principle that criminal statutes must be strictly construed. 490 F.2d at 809.

In its conclusion, although expressed with some hesitancy, the *Simpson* court held that "the statute is not sufficiently definite and specific to create a federal cause of action for the redress of appellant's grievances against her former husband." *Id.* at 810. However, the court limited its decision to the facts of the case, noting that no public official or any private person other than the husband was involved, and the *locus in quo* did not extend beyond the marital home. *Id.*

The Sixth Circuit reached a different conclusion in *United States v. Jones,* 542 F.2d 661 (6th Cir.1976). The *Jones* court distinguished *Simpson* on both the law and the facts. The court interpreted Title III's leg-

---

oral communication through the use of any electronic, mechanical, or other device...."

**3.** Title 18 U.S.C. § 2520 (West Supp.1988) provides in part:

"(a) In general.—Except as provided in section 2511(2)(a)(ii), any person whose wire, oral, or electronic communication is intercepted, disclosed, or intentionally used in violation of this chapter may in a civil action recover from the person or entity which engaged in that violation such relief as may be appropriate.

(b) Relief.—In an action under this section, appropriate relief includes—

(1) such preliminary and other equitable or declaratory relief as may be appropriate;

(2) damages under subsection (c) and punitive damages in appropriate cases; and

(3) a reasonable attorney's fee and other litigation costs reasonably incurred.

(c) Computation of damages.— ... (2) In any other action under this section, the court may assess as damages whichever is the greater of—

(A) the sum of the actual damages suffered by the plaintiff and any profits made by the violator as a result of the violation; or

(B) statutory damages of whichever is the greater of $100 a day for each day of violation or $10,000."

**4.** Title 18 U.S.C. § 2510(5)(a)(i) (West Supp. 1988) provides:

"As used in this chapter— ...

(5) 'electronic, mechanical, or other device' means any device or apparatus which can be used to intercept a wire, oral, or electronic communication other than—

(a) any telephone or telegraph instrument, equipment or facility, or any component thereof, (i) furnished to the subscriber or user by a provider of wire or electronic communication service in the ordinary course of its business and being used by the subscriber or user in the ordinary course of its business or furnished by such subscriber or user for connection to the facilities of such service and used in the ordinary course of its business...."

islative history as indicating that Congress was cognizant of and concerned by the use of electronic surveillance for the purpose of marital litigation. The court determined that the legislative history focusing on surveillance instigated by a spouse but conducted by a third party was applicable to interspousal surveillance. The court further reasoned that the extent of legislative attention to law enforcement surveillance, relative to that afforded private surveillance, likely indicated a Congressional consensus that private electronic surveillance is not justified. Finally, the court also observed as a matter of statutory construction that if Congress had intended otherwise, it could have provided for an express exception for interspousal wiretaps. *Id.* at 670–71.

Factually, the court distinguished *Simpson* on the basis that the husband and wife were separated at the time the surveillance took place. The husband had moved out of the house and was under a restraining order from the Chancery Court to prevent him from "coming about" his wife. Accordingly, there was no "marital home" as there had been in *Simpson,* and the husband conducted the surveillance from outside the home where the telephone was located. On those particular facts, the *Jones* court declined to imply an interspousal exception to the wiretap statute. *Id.* at 673.

In *Anonymous v. Anonymous,* 558 F.2d 677 (2d Cir.1977), the Second Circuit followed *Simpson* and declined to apply Title III to a husband's interception of telephone conversations between his wife and daughter. While the couple's daughter was residing with the husband, he installed a recording device on the telephone for the alleged purpose of avoiding contact with his wife when she called to speak with their daughter. The wife alleged that the hus-

band intended to use the tapes against her in a later custody battle. In declining to apply Title III to this interspousal domestic conflict, the court was persuaded by the extension phone exception contained in 18 U.S.C. § 2510(5)(a)(i). The fact that the husband taped conversations which he could have permissibly overheard was found to be a distinction without a difference in terms of that exception. In addition, the court noted that the extension exception was unavailable in *Jones* since the parties had established separate residences. *Id.* at 679.

The Fourth Circuit evened the split in *Pritchard v. Pritchard,* 732 F.2d 372 (4th Cir.1984), finding that there is no express exception for willful, unconsented-to interspousal electronic surveillance, nor is there any indication in the statutory language or legislative history of Title III that Congress intended to imply such an exception. The *Pritchard* court relied on other courts' analyses of the legislative history of the statute, and sided with the *Jones* court, finding ample indications that Congress was aware that the statute's inclusive language might reach interspousal surveillance.

An analysis of the district court opinions on this issue provides no further guidance, given that the courts' holdings are similarly divided.[5]

After careful consideration of the differing interpretations of Title III as they apply to the facts of this case, the Court is persuaded by the rationale of both *Simpson* and *Anonymous.* Here, the interception took place entirely within the marital home where both parties resided. Although the legislative history of Title III addresses the use of such surveillance in domestic disputes, it is unlikely that Congress intended its regulations to extend to

---

5. *See, e.g., Kempf v. Kempf,* 677 F.Supp. 618 (E.D.Mo.1988) (holding Title III inapplicable to wife's claim against her husband who installed a cassette recorder to a telephone in the family home to intercept her calls where the parties were sharing a home and living together as husband and wife); *Nations v. Nations,* 670 F.Supp. 1432 (W.D.Ark.1987) (holding that wife stated a cause of action under Title III by alleg-

ing that her husband placed a recording device on a telephone in the marital home without her knowledge or consent); *Lizza v. Lizza,* 631 F.Supp. 529 (E.D.N.Y.1986) (holding that husband's placement of a recording device on the residential home telephone without the wife's knowledge or consent did not violate Title III and did not subject the husband to civil liability under that statute).

**856**

such personal acts conducted within the marital home. Application of federal law to an interspousal domestic conflict would run counter to the tradition of leaving such matters to the realm of state courts.

The Court is particularly mindful of the reliance placed on the extension phone exception in *Simpson* and *Anonymous*. *See Simpson*, 490 F.2d at 809 n. 17; *Anonymous*, 558 F.2d at 678–679. What defendant accomplished in this case could have been accomplished just as easily by listening in on one of several extension phones described by plaintiff's evidence to be found in the home. Furthermore, the Court reads the extension exception as an expression of Congressional intent to exclude from Title III the interception of telephone conversations taking place within the marital home.

Finally, even if the Court were to conclude that Title III applies to this situation, defendant is entitled to a directed verdict because there is insufficient evidence to sustain plaintiff's case. There was no evidence, either from plaintiff's testimony or the tape removed from the recording device, that a conversation in which plaintiff participated was intercepted. As previously noted, the intercepted communication is one uttered by a person exhibiting an expectation that such communication is not subject to interception under circumstances justifying such expectation. 18 U.S.C. § 2510(2). Plaintiff's offer of proof further indicated that no such evidence would be forthcoming.

Viewing the evidence in a light most favorable to plaintiff, no reasonable inference may be drawn which suggests that defendant intercepted any communication uttered by plaintiff. Lack of such a reasonable inference is fatal to plaintiff's case. While 18 U.S.C. § 2511(1)(a) forbids one from either intercepting or endeavoring to intercept any wire communication, 18 U.S.C. § 2520(a) provides relief through a civil action only to a person whose wire communication is actually intercepted. Because no evidence exists to establish that plaintiff's wire communications were ever intercepted, Title III affords her no remedy.

Accordingly, and in light of the foregoing, defendant is entitled to judgment.