ANGELUS CHAMBERS RICKENBAKER v. THOMAS C. RICKENBAKER

No. 95

(Filed 14 July 1976)

**Evidence § 27— tapped telephone line — conversations inadmissible in alimony and child support action**

In an action for child support, alimony *pendente lite* and permanent alimony, the Court of Appeals correctly decided that the trial judge's finding that defendant did not use an extension phone in his office in the ordinary course of business was supported by ample evidence, where such evidence tended to show that defendant had the phone, which was an extension of the phone located in the parties' home, placed in a locked closet in his office without the knowledge or consent of plaintiff; a sound-activated recorder was installed by

defendant and not by the communications common carrier in the ordinary course of its business; and neither defendant nor his employees placed calls or directly received incoming calls on the telephone. Moreover, the Court of Appeals correctly affirmed that portion of the trial court's order which suppressed all evidence resulting from the interception of the plaintiff's telephone communications. 18 U.S.C. § 2515.

APPEAL by defendant from decision of the Court of Appeals pursuant to G.S. 7A-30(2), 28 N.C. App. 644, 222 S.E. 2d 463, (opinion by *Judge Arnold; Judge Parker* concurring, and *Chief Judge Brock* dissenting), affirming in part and vacating in part an order of the MECKLENBURG District Court filed June 10, 1975.

On 15 June 1973, Angelus C. Rickenbaker instituted this action against her husband, Thomas C. Rickenbaker, seeking child support for two minor children of the marriage, alimony *pendente lite* and permanent alimony. Defendant answered denying the material facts which plaintiff alleged in support of her claim for alimony and alleged, in bar of plaintiff's claim, adultery on the part of plaintiff.

The case was tried before District Judge William G. Robinson and judgment was entered awarding plaintiff use of the family home for herself and children as well as $2,200 per month for child support and alimony. On appeal, the Court of Appeals held that plaintiff had not proven the facts entitling her to relief. The judgment was vacated and the cause remanded for further proceedings.

Thereafter, on 17 June 1974, defendant filed a supplemental answer pleading several acts of adultery in bar of plaintiff's claim for alimony. Before the cause came to trial a second time, plaintiff filed a motion to suppress "any and all evidence on the trial of this cause resulting from the interception of wire or oral communications of the plaintiff by defendant and his agents and also any evidence derived from such interception of wire or oral communications . . . . " At the hearing on this motion, defendant produced evidence tending to show that plaintiff and defendant were married and living together as man and wife until the month of January 1973 when they separated and began to live separate and apart. Prior to the separation of plaintiff and defendant, Southern Bell Telephone and Telegraph Company installed a telephone (#375-8565) in the residence on Twiford Place. This telephone was listed in defendant's name

and he paid the telephone bills incurred from the use of the telephone throughout the time in controversy.

On 27 September 1973, upon instructions from defendant, the telephone company installed an extension telephone (#375-8565) in a supply closet in defendant's office in the Johnston Building in Charlotte. Without plaintiff's knowledge or consent, defendant then installed a sound-activated tape recorder to the equipment installed in a closet. The recording device and telephone extension line were used to record numerous conversations between plaintiff and other persons. The extension line was used solely in conjunction with the tape recorder to record telephone conversation messages and neither defendant nor his employees placed or directly received telephone calls on the extension telephone. Defendant listened to these recordings and as a result of these conversations, made reports to various investigators employed by the Wackenhut Corporation concerning the adulterous conduct alleged in defendant's supplemental answer.

Defendant testified that he had the extension telephone and recorder installed to determine if plaintiff was referring his business calls to his office.

By order dated 10 June 1975, Judge Robinson, after finding facts substantially in accord with the evidence presented at the hearing, concluded as a matter of law that defendant unlawfully intercepted plaintiff's telephone calls in violation of the provisions of 18 U.S.C. 2510, *et seq*. He thereupon ordered that the allegations of adulterous conduct contained in paragraph 8 of defendant's supplemental answer be stricken and that any evidence pertaining to the allegations of paragraph 8 should not be used by the defendant in the course of the trial of this case.

Holding that defendant's interception of the telephone calls violated the provisions of 18 U.S.C. 2510, *et seq.*, the Court of Appeals affirmed the order so far as it excluded all evidence resulting from the interception of plaintiff's telephone communications and vacated that portion of the order excluding any evidence pertaining to the *allegations* of paragraph 8 of the supplemental answer.

*Warren C. Stack and Richard D. Stephens for defendant appellant.*

*DeLaney, Millette, DeArmon & McKnight, P.A., by Ernest S. DeLaney, Jr., and Ernest S. DeLaney, III, for plaintiff.*

BRANCH, Justice.

The sole question presented by this appeal is whether the Court of Appeals erred in affirming that portion of the trial court's order which suppressed all evidence resulting from the interception of the plaintiff's telephone communications.

18 U.S.C. § 2511, in part, provides:

(1) Except as otherwise specifically provided in this chapter any person who—

(a) willfully intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any wire or oral communication;

(b) willfully uses, endeavors to use, or procures any other person to use or endeavor to use any electronic, mechanical, or other device to intercept any oral communication when—

(i) such device is affixed to, or otherwise transmits a signal through, a wire, cable, or other like connection used in wire communications; or . . . .

\* \* \*

shall be fined not more than $10,000 or imprisoned not more than five years, or both.

In order to intelligently follow the provisions of the pertinent statutes, we turn to 18 U.S.C. § 2510 for relevant definitions:

As used in this chapter—

(1) "wire communication" means any communication made in whole or in part through the use of facilities for the transmission of communications by the aid of wire, cable, or other like connection between the point of origin and the point of reception furnished or operated by any person engaged as a common carrier in providing or operat-

ing such facilities for the transmission of interstate or foreign communications;

(2) "oral communication" means any oral communication uttered by a person exhibiting an expectation that such communication is not subject to interception under circumstances justifying such expectation;

(3) "State" means any State of the United States, the District of Columbia, the Commonwealth of Puerto Rico, and any territory or possession of the United States.

(4) "intercept" means the aural acquisition of the contents of any wire or oral communication through the use of any electronic, mechanical, or other device.

(5) "electronic, mechanical, or other device" means any device or apparatus which can be used to intercept a wire or oral communication other than——

(a) any telephone or telegraph instrument, equipment or facility, or any component thereof, (i) furnished to the subscriber or user by a communications common carrier in the ordinary course of its business and being used by the subscriber or user in the ordinary course of its business; or (ii) being used by a communications common carrier in the ordinary course of its business, or by an investigative or law enforcement officer in the ordinary course of his duties;

The focal statute for our consideration is 18 U.S.C. § 2515 which provides:

Whenever any wire or oral communication has been intercepted, no part of the contents of such communication and no evidence derived therefrom may be received in evidence in any trial, hearing, or other proceeding in or before any court, grand jury, department, officer, agency, regulatory body, legislative committee, or other authority of the United States, a State, or a political subdivision thereof if the disclosure of that information would be in violation of this chapter.

Defendant, relying on the language in 18 U.S.C. § 2510 (5) (a), contends that Title III does not apply to the facts of this case because the communications were intercepted by the use of an extension telephone furnished by a communica-

tions common carrier which was being used in the ordinary course of his business. In support of this argument, he relies upon the case of *United States v. Christman,* 375 F. Supp. 1354. In *Christman,* the Regional Chief of Security for a department store chain was charged with unlawful interception of telephone conversations. He had received reports concerning certain improprieties in the shoe department of a particular store. This store operated a private telephone system to be used for calls within the store or to other stores in the same chain. Defendant arranged for an extension to be installed to the shoe department extension and thereby intercepted and recorded certain conversations. The United States District Court granted the defendant's motion for acquittal and noted that Congress intended to apply criminal sanctions to limited types of interceptions and communications and that a privately operated intercommunication system not using the facilities of a common carrier is not within the scope of the statute. 18 U.S.C. § 2510(2). Further, the court held that § 2511(2)(a)(i) allowed the interception of "communications in the normal course of employment 'while engaged in any activity which is a necessary incident of the rendition of the service or to the protection of the rights or property of the carrier of such communication . . . . ' " The court reasoned that employees misusing a private telephone system are not entitled to any reasonable expectation that the conversations were not subject to interception. 18 U.S.C. § 2510(2). Obviously instant case is distinguishable from *Christman* since we are not here concerned with the interception of communications by a common carrier engaged in an activity which was necessary or incidental to the rendition of the services by the common carrier or for the protection of its rights.

The 10th Circuit Court of Appeals has flatly held as a matter of law that a telephone extension use without authorization or consent to surreptitiously record a private telephone conversation is not being used in the ordinary course of business. *United States v. Harpel,* 493 F. 2d 346; *accord: Gerrard v. Blackman,* 401 F. Supp. 1189.

In the case before us, defendant testified that he used the telephone to obtain information as to possible business calls. However, the circumstances surrounding the facts of this case rebut this testimony. The telephone was placed in a locked closet in defendant's office without the knowledge or consent of plaintiff. A sound-activated recorder was installed by defendant and

not by the communications common carrier in the ordinary course of its business. Neither defendant nor his employees placed calls or directly received incoming calls on the telephone. Under these circumstances, we hold that the Court of Appeals correctly decided that the trial judge's finding that defendant was not using the extension telephone in the ordinary course of business was supported by ample evidence.

Defendant, relying upon the case of *Simpson v. Simpson,* 490 F. 2d 803, strongly argues that 18 U.S.C. § 2511, *et seq.,* does not prohibit a spouse from intercepting telephone communication from the other spouse. In *Simpson,* the husband and wife were residing in the marital home and the husband, who had misgivings as to his wife's fidelity, attached a device for tapping and recording conversations to the phone lines within the home. He thereby intercepted conversations between his wife and another man. The tapes were played to several persons including a lawyer on whose advice the wife agreed to an uncontested divorce. Thereafter the wife instituted action in the United States District Court for civil damages against her former husband pursuant to 18 U.S.C. § 2520. The District Court held that the interception of messages in the home by the husband through the use of electronic equipment of conversations between his wife and other persons did not come within the statutory proscription of Title III of the Omnibus Crime Control and Safe Street Act of 1968. In affirming the decision of the District Court, the 5th Circuit Court of Appeals, after initially stating that the question before it was one of statutory construction, proceeded to review the legislative history of the act in an attempt to find the legislative intent in enacting the statutes. The court initially conceded that the naked language of Title III, because of its inclusiveness, reached the case. In the next sentence, however, the court stated that in its opinion Congress did not intend such far-reaching results because the statute, the committee reports and the legislative hearings did not reveal a positive intent to reach so far. Further, after observing that Title III is a part of a crime control act which sought to bolster the effectiveness of law enforcement officers, the court stated:

> Be this as it may, Title III also was intended to protect individuals against invasions of their privacy by sophisticated surveillance devices. *Senate Report,* p. 2153. Thus,

the Senate report introduces its section on the "Problem" with the following paragraph:

> The tremendous scientific and technological developments that have taken place in the last century have made possible today the widespread use and abuse of electronic surveillance techniques. As a result of these developments, privacy of communication is seriously jeopardized by these techniques of surveillance. Commercial and employer-labor espionage is becoming widespread. It is becoming increasingly difficult to conduct business meetings in private. Trade secrets are betrayed. Labor and management plans are revealed. No longer is it possible, in short, for each man to retreat into his home and be left alone. Every spoken word relating to each man's personal, marital, religious, political, or commercial concerns can be intercepted by an unseen auditor and turned against the speaker to the auditor's advantage.

*Id.* at U.S. Code Cong. & Admin. News 1968, p. 2154. The report further states that, "To assure the privacy of oral and wire communications, title III prohibits *all wiretapping* and electronic surveillance by persons *other than duly authorized law enforcement officers* . . . . " *Id.* at U. S. Code Cong. & Admin. News 1968, p. 2153. The nature and breadth of Congress's response to private surveillance is fairly indicated by the Senate report's section entitled "Prohibition," quoted in full in the margin. [Emphasis ours.]

The quoted prohibition is as follows:

"Virtually all concede that the use of wiretapping or electronic surveillance techniques by private unauthorized hands has little justification where communications are intercepted without the consent of one of the participants. No one quarrels with the proposition that the unauthorized use of these techniques by law enforcement agents should be prohibited. It is not enough, however, just to prohibit the unjustifiable interception, disclosure, or use of any wire or oral communications. An attack must also be made on the possession, distribution, manufacture, and advertising of intercepting devices. All too often the invasion of privacy itself will go unknown. Only by striking at all aspects of the problem can privacy be adequately protected. The prohibition, too, must be enforced with all appropriate sanctions.

Criminal penalties have their part to play. But other reme-
dies must be afforded the victim of an unlawful invasion
of privacy. Provision must be made for civil recourse for
damages. The perpetrator must be denied the fruits of his
unlawful actions in civil and criminal proceedings. Each
of these objectives is sought by the proposed legislation."

After noting that the act should be strictly construed be-
cause it imposed criminal sanctions, the court concluded its
opinion with this language:

As should be obvious from the foregoing, we are not
without doubts about our decision. However, we have con-
cluded that the statute is not sufficiently definite and
specific to create a federal cause of action for the redress
of appellant's grievances against her former husband. Our
decision is, of course, limited to the specific facts of this
case. No public official is involved, nor is any private per-
son other than appellee, and the *locus in quo* does not extend
beyond the marital home of the parties.

*Simpson* is distinguishable from instant case in that in
*Simpson,* the husband and wife were living together in the mari-
tal home as man and wife. Here, the parties were living in a
state of separation so that the marriage veil which separates the
marriage relation from public concern and scrutiny had been
torn asunder. Thus the statutory regulation did not invade the
realm of personal acts within a marital home. The cases are
further distinguishable in that *Simpson* involved a suit seeking
recovery of civil damages. In the case *sub judice* we consider
only an evidentiary matter. We think that these distinctions are
highlighted because in *Simpson,* the court very carefully re-
tricted its decision to the specific facts of that case.

We do not agree with the 5th Circuit's patently doubtful
conclusion that the legislative history of the statutes under con-
sideration shows no direct indication that the statute was in-
tended to reach domestic conflicts. The history of the act
indicates a legislative intent that individuals be protected from
invasions of their privacy by sophisticated surveillance devices.
Further, we think that the language of the statute compels us
to reach a result consistent with the decision of the Court of Ap-
peals. The statute clearly states that:

. . . Any person who willfully intercepts . . . any wire or
oral communication; . . . willfully uses any . . . mechanical

or other device to intercept any oral communication when such device is affixed to, or otherwise transmits a signal through, a wire, cable or other like connection used in wire communications . . . shall be fined not more than $10,000.

18 U.S.C. § 2511. Title III further provides that:

. . . No part of the contents of such communication and *no evidence derived therefrom may be received in evidence in any trial,* hearing, or other proceeding in or before any court . . . or other authority of the United States, a State, or a political subdivision thereof if disclosure of that infortion would be in violation of this chapter. [Emphasis ours.]

18 U.S.C. § 2515. None of the exceptions to the proscription contained in this chapter are applicable to instant case.

Where the statutory language is clear, there is no need to refer to legislative history. "The plain words and meaning of a statute cannot be overcome by a legislative history which, through strained processes of deduction from events of wholly ambiguous significance, may furnish dubious bases for inference in every direction." *Gemsco, Inc. v. Walling,* 324 U.S. 244, 89 L.Ed. 921, 65 S.Ct. 605; *United States v. Public Utilities Commission,* 345 U.S. 295, 97 L.Ed. 1020, 73 S.Ct. 706; *Ex Parte Collett,* 337 U.S. 55, 93 L.Ed. 1207, 69 S.Ct. 944; *Packard Motor Car Co. v. N.L.R.B.,* 330 U.S. 485, 91 L.Ed. 1040, 67 S.Ct. 789. Even so, we note that several courts have elected to interpret the statutes before us and have reached the conclusion that the plain legislative intent in enacting Title III was that no part of the contents or wire or oral communications may be received in evidence in any trial if the message was intercepted in violation of that chapter. *Gelbard v. United States,* 408 U.S. 41, 33 L.Ed. 2d 179, 92 S.Ct. 2357; *United States v. Eastman,* 465 F. 2d 1057; *State v. Ford,* 108 Ariz. 404, 499 P. 2d 699, *cert. denied,* 409 U.S. 1128, 35 L.Ed. 2d 261, 93 S.Ct. 950.

At this time, the question of whether the challenged evidence would be available for the purpose of impeachment under given conditions is not before us and is not decided. We expressly limit our decision to the facts of this case and, as so limited and modified, the opinion of the Court of Appeals is affirmed.

Modified and affirmed.