IN RE THE MARRIAGE OF JUDITH GAYLE (FORMAN LOPP AND JAMES F. FORMAN).

[No. 1-776A117. Filed May 10, 1977.]

*Rodney H. Grove, Grove, Miller & Lantz,* of Evansville, for appellant.

*Howard P. Trockman, Kenneth W. Macke, Trockman & Flynn,* of Evansville, for appellee.

## CASE SUMMARY

LOWDERMILK, J.—Respondent-appellant Judith Gayle Lopp (Judith) appeals from the trial court's modification of its

decree in the dissolution of the marriage of Judith and petitioner-appellee James F. Forman (Forman).

Forman petitioned the trial court to modify its decree so as to grant him custody of the parties' two minor daughters. Judith sought to have Forman held in indirect contempt and moved the court for attorney's fees. The trial court held hearings on these matters and entered the following orders:

## I.

"Come now the parties in person and by counsel, and the Court having heard and considered the evidence of the parties, having considered the arguments and briefs of counsel for the parties concerning certain tendered exhibits, having taken this matter under advisement and now being duly advised in the premises FINDS that the Plaintiff's objections to said tendered exhibits should be sustained, that the circumstances of the parties have materially and substantially changed, and that the best interests of the children of the parties will be served by granting the general care, custody and control of the parties' minor children to the Father **herein.**

"IT IS THEREFORE CONSIDERED, ORDERED AND ADJUDGED by the Court that:

\* \* \*

4. The decree of divorce herein, as heretofore modified, is hereby further modified; the Defendant is hereby granted the general care, custody and control of the parties' two (2) minor children, Kristi Gayle Forman and Amy Lynn Forman, subject to the rights of the Plaintiff to visitation and temporary custody as hereinafter set out; and the Defendant's obligation to pay support to the Plaintiff for said minor children is now hereby terminated.

\* \* \*"

## II.

"The Court, having had plaintiff's information for contempt, plaintiff's motion for attorney fees and motion to stay execution of judgment and the defendant's response to said motions under advisement, having considered said matters and being duly advised in the premises, now rules as follows:

1. The defendant is not guilty of indirect contempt.

2. Plaintiff's request that defendant pay the costs and attorney fees for services of her attorney during trial and/or appeal is denied.

\* \* \*

4. Plaintiff is declared to be a legally indigent person for the purpose of prosecuting an appeal from the judgment of this Court; and the Court appoints Grove and Miller as plaintiff's attorneys for perfecting such appeal, fees of said attorneys for perfecting such appeal, fees of said attorneys to be paid out of County funds to the extent that the same is allowed by the State Board of Accounts.

\* \* \*"

## ISSUES

1. Whether the trial court erred in modifying its decree so as to place the parties' minor children in the custody of their father.

2. Whether the trial court took judicial notice of the findings and judgment in the dissolution action involving Judith and her second husband.

3. Whether the trial court erred in finding Forman to be not guilty of indirect contempt.

4. Whether the trial court erred in denying Judith's motion for attorney's fees.

5. Whether the trial court erred in denying Judith's request for a new hearing on the ground of newly-discovered evidence.

## DECISION

*Issue One:*

Forman bore the burden of justifying a change of custody. *Leohr* v. *Leohr* (1974), 161 Ind. App. 514, 316 N.E.2d 400.

Judith contends that he did not do so and that the trial court therefore erred in its modification of its decree.

In *Franklin* v. *Franklin* (1976), 169 Ind. App. 537, 349 N.E.2d 210, 212-213, Judge Lybrook set forth the considerations which are relevant in a case such as the one at bar:

"Examination of Indiana's new Dissolution of Marriage Act . . . is of some assistance in assessing the scope of the trial court's discretion. This Act specifically delineates the factors to be considered by the trial court in determining the best interests of the child. These factors are:

(1) the age and sex of the child;

(2) the wishes of the child's parent or parents;

(3) the wishes of the child;

(4) interaction and interrelationship of a child with his parent or parents, his siblings, and "any other person who may significantly affect the child's best interests;

(5) the child's adjustment to his home, school and community; and

(6) the mental and physical health of all individuals involved . . .

\* \* \*

"No cases have yet been reported interpreting these provisions of the Dissolution of Marriage Act. The section dealing with child custody does not specifically provide that a change of conditions must be present before the court can modify the custody decree. The guiding principle in this Act, as under prior decisions, is the best interests of the child. In determining what is in the best interests of the child it is unnecessary to find that the mother is unfit, for the father's position may have improved to the degree that the best interests of the child would dictate that the father have custody of the child . . .

\* \* \*

"It is the duty of the trial court to determine whether there was a change in conditions which warranted a change in custody. This court's function on appeal is to examine the decision of the trial court and determine whether the record discloses evidence or reasonable inferences to be drawn therefrom which serve as a rational basis to support the finding of the trial court . . ." (Footnote, citations omitted)

Our examination of the record reveals evidence that: Forman had been married for two years to his second wife who

was a full-time housewife; they had a 10-month-old son; for 14 months they had lived in a four-bedroom house located across the street from a school; Forman was slated to become the Evansville area manager for Xerox Corporation; when they had custody of the girls for two weeks, all were happy.

Shortly after the dissolution of Judith and Forman's marriage the girls were dressed nicely when Forman picked them up for his visitation; and they always brought along the extra clothes necessary for their overnight visit. Within the year before the modification hearing they ceased bringing any extra clothes; the clothing which they wore when Forman picked them up was ragged and dirty. The girls needed bathing; their hair required care.

These conditions also existed when the girls stayed overnight with the parents of Judith's second husband. They once bought shoes for the younger girl because she had outgrown the ones she was wearing which hurt her feet. In the shoe store, they discovered that she had been dressed in her older sister's stockings which were too large and so dirty that they had to be discarded and replaced on the spot. The child wept with chagrin.

After May, 1975, Judith began to ignore the house where she lived with the girls, her second husband, and their son; she no longer cooked meals regularly and drank more alcohol. New clothes were discovered in the basement after they had been stuffed into a paper sack where they had mildewed.

There was also evidence of an event which occurred after Judith's separation from her second husband and which for the girls was tragic. Two nights after Judith admittedly engaged in sexual intercourse with another man in her second husband's home, her second husband broke into his home and barged into the master bedroom where the girls were sleeping. Judith emerged from the basement nude from the waist down, unable to walk without bumping into the walls, and with slurred speech. In the basement were empty beer cans, the

remains of a joint of marijuana, Judith's jeans, a pair of men's underwear, and—hiding behind the furnace—a man wearing jeans but *sans* underwear.

The father of Judith's second husband calmed the girls and escorted them to the front door of the house from where Forman took them to his home. From the girls' bed Judith's second husband removed sheets on which there were brownish liquid spots and which witnesses described as unsanitary.

Forman's role in this despicable episode was admittedly passive. Accompanied by two deputies of the Vanderburgh County Sheriff, Judith went to Forman's home and recovered custody of the girls within five hours of the intrusion. Forman returned their clothes later.

The record discloses evidence that Forman had become able to maintain a family home for the girls, evidence of Judith's social activities, and evidence of the declining quality of care of the girls and their home by Judith—all factors which support the trial court's decision. See *Franklin* v. *Franklin, supra; Landing* v. *Landing* (1972), 152 Ind. App. 660, 284 N.E.2d 857.

Judith's brief ignores most of the above evidence and focuses on her version of the deplorable incident as well as evidence that she kept her daughters and their home clean, cooked for them, and clothed them well. Thus her argument amounts to a reassessment of the witnesses' credibility and a reweighing of the evidence. We would direct her to the statement of our Supreme Court in *Brickley* v. *Brickley* (1965), 247 Ind. 201, 204, 210 N.E.2d 850, 211 N.E.2d 183:

> "While we are not able to say the trial judge could not have found otherwise than he did upon the evidence introduced below, this Court as a court of review has heretofore held by a long line of decisions . . . that we are in a poor position to look at a cold transcript of the record, and conclude that the trial judge, who saw the witnesses, observed their demeanor, and scrutinized their testimony as it came from the witness stand, did not properly under-

stand the significance of the evidence, or that he should have found its preponderance or the inferences therefrom to be different from what he did.

"On appeal it is not enough that the evidence might support some other conclusion, but it must positively require the conclusion contended for by appellant before there is a basis for reversal." (Footnote, citations omitted)

We cannot reverse the trial court's decision on the basis of conflicting evidence. *Franks* v. *Franks* (1975), 163 Ind. App. 346, 323 N.E.2d 678; *Leohr* v. *Leohr, supra.*

*Issue Two:*

Judith contends that the trial court abused its discretion and committed reversible error by taking judicial notice of the findings and judgment rendered in a different cause: the dissolution of the marriage of Judith and her second husband. She cites the general rule that a court will not take judicial notice of its own records in a separate case or of the records of a case pending in a different court. 12 I.L.E., *Evidence* § 8 (1959). And she relies on *Opperman* v. *Opperman* (1945), 77 Ohio App. 69, 65 N.E.2d 655, where a trial court's judgment in a dissolution action was reversed because it was based upon facts which the court judicially knew from a separate case.

In the case at bar, the trial court in its ruling stated:

"This is not the first occasion that this Court has had to go into the matter of the custody of these two children. At least on one or perhaps two other occasions, this Court has refused to modify its order and has left the custody of the children with the wife.

"I am now confronted with the same situation and it has been one of the most agonizing decisions that I have had to make since I came to the Superior Court Bench because when you take children from the natural mother, you must have good and sufficient cause, in my opinion.

"I have heard the evidence in this cause. *I know that the two children in question have in the past, are at present, and judging from the acrimony of the most recent divorce of Mrs. Lopp, are bound to be and will be subject to a great*

*deal of emotional stress and pressure.* I know that these children need a secure and stable environment in which to live. *I have tried to narrow this matter down and pass upon it on the narrowest possible ground, to-wit: what is best for these children. From the evidence in this cause, this Court has concluded that by a preponderance of the credible evidence the petition should be granted* and the custody should be awarded to the father and the Court will terminate the support payments as of the date of the effectiveness of this order." (Our emphasis)

Judith's counsel, in his objection to said ruling, stated *inter alia:*

|  |  |
|---|---|
|  | "[A]s I understand the Court has predicated its ruling in part on a collateral matter in this case and I wish to advise the Court that the same motions are being made tomorrow in the Lopp case." |
| BY THE COURT: | "Well, now, just a moment. At that point, let me stop and inquire of you now —I understood you to say that the Court in part has based its ruling on a collateral matter?" |
| BY JUDITH'S COUNSEL: | "Yes, Your Honor." |
| BY THE COURT: | "Please enlighten me on that." |
| BY JUDITH'S COUNSEL: | "Well, the Court, as I understood the Court's ruling, the Court was concerned about the circumstances, and the children in the environment. There is no question that there has been a previous ruling in the divorce case involving the respondent in this case wherein adverse rulings were made as to the home and that type of matter and that is being appealed—from the standpoint of her vacating the premises and those kind of items. She doesn't have the funds or anything else to the extent that—and "I don't want the Court to misunderstand what I am saying—but to the extent that what is of record in this court is available to you as well as to me and there is a judgment in the Lopp vs. Lopp matter. And a petition is going |

|  | to be filed today or tomorrow depending on how quickly I can get it done attempting to assert the same right under the circumstances." |
|---|---|
| BY THE COURT: | "All right. As a presiding judge of Superior Court, I can't help but judicially know about the other proceedings you mentioned." |
| BY JUDITH'S COUNSEL: | "I am fully aware of that and that is all that I was referring to." |
| BY FORMAN'S COUNSEL: | "But that is not to say that the Court based its ruling upon that at all." |
| BY THE COURT: | "That is what I was distinguishing, Counselor." |
| BY JUDITH'S COUNSEL: | "Your Honor, that was not my indication." |

It is obvious that the trial court did not base its ruling on the facts in Judith's other dissolution action—as the parties recognized at trial. From the testimony of Judith and her second husband in the proceedings which form the basis of this appeal the trial court could determine that hard feelings existed between the two; Judith admitted that their dissolution case was pending and that they were not living together. Thus the trial court's ruling reflects knowledge gained from Judith's admissions and from observations of Judith and her second husband, whose hostility toward each other—as exhibited in open court—the trial court could properly note. *Wabash Railway Co.* v. *City of Gary* (1921), 191 Ind. 394, 132 N.E. 737.

Secondly, Judith's counsel explained to the trial court that in his objection to its ruling he did not intend to indicate that its decision was based upon the facts of Judith's other dissolution action. Said objection cannot be added to in this court. *Cooper* v. *State* (1972), 259 Ind. 107, 284 N.E.2d 799.

*Issue Three:*

Judith fails to cite any authority which supports her assertions that the trial court erred in not finding Forman guilty

of indirect contempt. This court cannot answer such "bald assertions of error." *Williams* v. *State* (1973), 260 Ind. 543, 547, 297 N.E.2d 805. We deem this issue to be waived. Ind. Rules of Procedure, Appellate Rule 8.3(A)(7); *Miller* v. *State* (1971), 256 Ind. 296, 268 N.E.2d 299.

*Issue Four:*

Judith argues that IC 1971, 31-1-11.5-16 (Burns Code Ed., Supp. 1976) mandated the trial court to grant her motion to have Forman pay her attorney's fees for representing her in the modification proceedings and for bringing this appeal. She claims that the trial court's denial of said motion constituted reversible error.

Our review of the trial court's ruling on this motion is limited to a search for abuse of discretion. IC 1971, 31-1-11.5-16; *Castor* v. *Castor* (1975), 165 Ind. App. 520, 333 N.E.2d 124. We find none.

*Issue Five:*

Judith contends that the trial court erred in denying her request for a new hearing which was made in her motion to correct errors. Attached hereto were affidavits of two women who averred that following the hearings Forman told one of them, who had testified at one of the hearings, "[O]ut of all the people that testified at the hearing, you were the only one that told the truth." Forman filed a counter-affidavit averring that the woman who testified was an employee of Judith's counsel and that, referring to her testimony that she and Forman had not engaged in any extra-marital affairs, he told her, "[A]t least you told the truth and I am not so sure everybody did."

A motion pursuant to Ind. Rules of Procedure, Trial Rule 59(A)(6) for a new trial on the basis of newly-discovered evidence should be treated with great caution; the alleged evidence should be carefully scrutinized, and must be more than merely impeaching. *Kelly* v.

*Bunch* (1972), 153 Ind. App. 407, 287 N.E.2d 586. Inasmuch as Judith's "newly-discovered evidence" was merely impeaching, the trial court did not err in denying her request for a new hearing.

Having examined the record in this cause and having found no error therein, the modification order of the trial court is hereby

*Affirmed.*

Robertson, C.J., and Lybrook, J., concur.

NOTE.—Reported at 362 N.E.2d 492.