370 N.E.2d 977 (1977)
In re the MARRIAGE OF Judith Gayle LOPP, Respondent-Appellant, and
James D. Lopp, Jr., Petitioner-Appellee.
No. 1-676A89.
Court of Appeals of Indiana, First District.
December 28, 1977.
Rehearing Denied February 6, 1978.
*978 Rodney H. Grove, David V. Miller, Jeffery L. Lantz, Evansville, for respondent-appellant; Grove, Miller & Lantz, Evansville, of counsel.
Jack N. Vanstone, Rice & Vanstone, Evansville, for petitioner-appellee.
LYBROOK, Judge.
Respondent-appellant, Judith Gayle Lopp, appeals from a judgment by the court determining that the marriage of James Daniel Lopp, Jr. (Husband) and Judith Gayle Lopp (Wife) is dissolved and that husband shall have custody of the one child born from the marriage, James Daniel Lopp, III. Appellant-wife presents the following issues for our review:
(1) Whether the court abused its discretion and committed reversible error by admitting into evidence a tape recording of conversations obtained by a wiretap installed by husband-appellee?
(2) Whether the court committed reversible error by admitting into evidence a deposition taken by appellee where appellant allegedly had no notice nor was afforded the right to cross-examine defendant?
(3) Whether the court erred in overruling appellant's motion to rescind the agreed provisional order?
(4) Whether the court abused its discretion in granting appellee-husband temporary and permanent custody of the parties' minor child?
(5) Whether the court abused its discretion in its allegedly disproportionate division of the parties' property and denying appellant attorney fees and cost for appeal?
The facts most relevant to these issues reveal that appellant-wife and appellee-husband, an attorney, were married on January 9, 1971. The couple became involved in a domestic crisis and they separated on September 22, 1975. They have not cohabited since their separation. Wife and Husband had one child, James Lopp, III. Wife had custody of her two children from a previous marriage.
On the day of their separation, September 22, 1975, Husband confronted Wife with tape recordings of telephone conversations allegedly between Wife and various other parties. Husband took physical custody of the couple's child on this date, and moved out of the residence of the parties.
The following day Wife went to her husband's law office. Her husband's father, also an attorney, informed her that if she did not consent to give her husband temporary custody of their child until this conflict was resolved, he would phone her former husband, inform him of the tapes and their contents, and she could possibly lose custody of all three of her children. Thereafter she signed an agreed provisional order that reads in part as follows:
"Comes now the Husband in the above matter and files his petition for custody of parties' minor child, and comes now the Wife and the parties agree as follows:
1. That the Husband shall have the care, custody and control of the parties' minor child, James Daniel Lopp, III, provided, however, the Wife shall have the temporary custody of said child at reasonable times.
And the Court now approves the agreement of the parties and the same is now so ORDERED.
* * * * * *

*979 I have read the above order and being advised of my rights to an attorney, freely and voluntarily consent and approve said order.
 /s/ Judy Lopp 
 Wife"
On September 29, 1975, after Wife talked to an attorney, a petition was filed which asked for temporary custody of the parties' child, adequate support, possession of the parties' home, and an order restraining Husband from interfering with her quiet enjoyment of the home.
On September 30, 1975, after a meeting between Wife, Husband, his father and her attorney, the court approved the following order and certified it into the record:
"Comes now the husband and by his attorney, Glenn A. Grampp, and comes now the wife by her attorney, David Kelley, and the wife's petition coming on for hearing, the parties agree as follows:
1. That the husband shall have the care, custody and control of the parties' minor child, James Daniel Lopp, III, provided however, the wife shall have the privilege of seeing and visiting the parties' minor child, one day a week from 9:00 A.M. to 5:00 P.M.
2. That the husband shall pay to the wife, the sum of seventy-five dollars ($75.00) each week for her support and maintenance pending this matter, first payment to be made Friday of this week, October 3, 1975 and a like sum each Friday thereafter pending this matter.
3. That the wife shall have the privilege of occupying the residence pending this matter and that the husband shall pay the utilities as they become due and payable, local telephone calls only.
4. That the wife is restrained from removing any property from the residence.
5. That the husband is to have reasonable access to the house for the purpose of inspection and the wife is to provide the husband with a house key.
6. That the wife is to have the use and possession of a certain Ford Station Wagon.
7. That the wife shall not incur or create any debts chargeable to the husband including but not limited to charge or credit accounts for her own person or any other person.
8. That the husband should pay the wife's attorney, David Kelley, the sum of three hundred dollars ($300.00), one-half of said sum to be paid within thirty (30) days from the date of this order and the balance to be paid within sixty (60) days from the date of this order.
9. That this Court shall retain jurisdiction of this cause, subject matter and persons herein.
This agreement is entered into freely and voluntarily without coercion or duress and with the wife being advised by her attorney, and having full knowledge of all the facts.
And the court now approves the agreement of the parties and the same is now so ordered."
* * * * * *
The evidence at trial reveals that Husband attached a self-activating tape recorder to his home phone on September 20, 1975, and thus recorded all telephone conversations. The evidence at trial further reveals certain events that Judge Lowdermilk of this court described in the case In Re The Marriage of Judith Gayle (Forman) Lopp, Appellant and James F. Forman, Appellee (1977), Ind. App., 362 N.E.2d 492.
On December 22, 1975, the court issued its judgment and findings for Husband on his Petition for Dissolution and denied Wife's Cross-Petition for Dissolution of Marriage. The court gave custody of James Lopp, III, to Husband. From this determination, Wife appeals.

I.
The first issue for our consideration is whether the court abused its discretion and committed reversible error by admitting into evidence a tape recording of conversations obtained by a wiretap installed by Husband.
*980 As a threshold issue we must determine if the wiretap conducted by Husband comes within the ambit of the questioned Federal Wiretap Statute. 18 U.S.C.A. § 2511 in pertinent part reads as follows:
"§ 2511. Interception and disclosure of wire or oral communications prohibited
(1) Except as otherwise specifically provided in this chapter any person who 
(a) willfully intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any wire or oral communication;
(b) willfully uses, endeavors to use, or procures any other person to use or endeavor to use any electronic, mechanical, or other device to intercept any oral communication when 
(i) such device is affixed to, or otherwise transmits a signal through, a wire, cable, or other like connection used in wire communication; or
* * * * * *
(c) willfully discloses, or endeavors to disclose, to any other person the contents of any wire or oral communication, knowing or having reason to know that the information was obtained through the interception of a wire or oral communication in violation of this subsection; or
(d) willfully uses, or endeavors to use, the contents of any wire or oral communication, knowing or having reason to know that the information was obtained through the interception of a wire or oral communication in violation of this subsection;
shall be fined not more than $10,000 or imprisoned not more than five years, or both."
While the above statute appears to provide only a criminal sanction, the second tier of a three tier system of wiretap sanctions is provided for in 18 U.S.C.A. § 2515 which reads:
"§ 2515. Prohibition of use as evidence of intercepted wire or oral communications
Whenever any wire or oral communication has been intercepted, no part of the contents of such communication and no evidence derived therefrom may be received in evidence in any trial, hearing, or other proceeding in or before any court, grand jury, department, officer, agency, regulatory body, legislative committee, or other authority of the United States, a State, or a political subdivision thereof if the disclosure of that information would be in violation of this chapter."
The third and final sanction is provided by 18 U.S.C.A. § 2520 which reads:
"§ 2520. Recovery of civil damages authorized
Any person whose wire or oral communication is intercepted, disclosed, or used in violation of this chapter shall (1) have a civil cause of action against any person who intercepts, discloses, or uses, or procures any other person to intercept, disclose, or use such communications, and (2) be entitled to recover from any such person 
(a) actual damages but not less than liquidated damages computed at the rate of $100 a day for each day of violation or $1,000, whichever is higher;
(b) punitive damages; and
(c) a reasonable attorney's fee and other litigation costs reasonably incurred.
A good faith reliance on a court order or on the provisions of section 2518(7) of this chapter shall constitute a complete defense to any civil or criminal action brought under this chapter."
This appears to be a case of first impression in Indiana and thus we may look to other jurisdictions for guidance in applying these statutes. Husband admits that he placed the wiretap, on his own marital home, but asserts that it was not the intent of Congress to interfere with the domestic relations between a man and his wife. He further asserts that no expectation of privacy exists between a husband and wife and that the wiretap statute can only be applied where an expectation of privacy exists. He cites as authority for his position Simpson v. Simpson, 490 F.2d 803 (5th Cir.1974).
*981 Wife contends that the plain meaning of the language of the statute should control. She asserts that the language of 18 U.S.C.A. § 2511 "Except as otherwise specifically provided in this chapter any person who  * * *" (our emphasis) must be interpreted to mean exactly what it says. We find support for her position in the cases of Rickenbaker v. Rickenbaker (1976), 290 N.C. 373, 226 S.E.2d 347, and United States v. Jones, 542 F.2d 661 (6th Cir.1976).
We find none of these cases to be controlling in this matter. The Simpson court expressed doubts in regard to its decision. In addition the Simpson case dealt basically with the civil remedy provided by the wiretap statute. The Rickenbaker case dealt exclusively with the exclusion of evidence in a domestic dispute; however, the telephone which was tapped was not actually in the marital home. The Jones case dealt with criminal charges against a husband who was no longer residing in the "marital home".
It is our opinion that Congress has enacted three separate and distinct remedies for courts to apply when confronted with a wiretap violation. We are only faced with resolving an application of the least severe of those remedies; namely, the exclusion of evidence gathered from an illegal wiretap.
It is our opinion that we must follow the plain meaning of the words of the statute when resolving questions concerning the application of the least coercive of the three tiers of remedies provided by 18 U.S.C.A. § 2510 et seq. It is an established rule of statutory construction that effect will be given to the plain and unambiguous meaning of the words used. United States v. Oregon, 366 U.S. 643, 81 S.Ct. 1278, 6 L.Ed.2d 575 (1961); Bowen v. Review Bd. of Indiana Employment Sec. Div. (1977), Ind. App., 362 N.E.2d 1178.
18 U.S.C.A. § 2511 states "Except as otherwise specifically provided in this chapter any person who  * * *" (Emphasis added). We hold that the above words mean exactly what they say; namely, a spouse may not secretly place wiretap equipment on the telephone within the marital home and then claim an exemption from the above statutes. Congress explicitly and meticulously detailed the exemptions from the control of the act, and no spousal immunity was listed among those exceptions. We therefore hold that the act of Husband was within the proscribed conduct of 18 U.S.C.A. § 2510 et seq. for the purpose of applying the exclusionary rule found in 18 U.S.C.A. § 2515.
Even if we chose to look behind the plain meaning of the statute, our position finds support in both the legislative history of the act and the case interpretations of the statute. The Congress was plainly aware of the uses of electronic surveillance in marital cases. See discussion of legislative history in United States v. Jones, supra. Had the Congress chosen to exclude domestic wiretaps from the ambit of wiretap statutes it could have added an exception to the list of acts which were not to be covered by the statutes. See 18 U.S.C.A. § 2511(2).
It appears that Congress intended the act as a protection of the right to privacy. It is well established that the right to privacy is designed to protect people, not places. Katz v. United States (1967), 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576. We can see no valid reason why the right to privacy should be totally abrogated upon entry into a marriage. We therefore hold that the least severe of the three possible sanctions for illegal wiretaps should be applied in Indiana to exclude the use of such evidence in any legal proceeding. See United States v. Jones, supra, and Rickenbaker, supra. We hold that a spouse may not obtain evidence through an illegal wiretap, wield that evidence as a sword in a domestic relation action, and then hide behind that same marital status to justify the use of his illegally obtained evidence. The wiretap evidence should not have been admitted at the trial. We specifically do not decide any liability which Husband may be under from the impact of the remaining two remedies of the wiretap act. This decision is further to be limited to its facts and applied solely to the exclusion of evidence from proceedings which are collateral to the wiretap itself.
*982 Husband further asserts that even if the wiretap was illegal, the admission of the tapes into evidence was harmless error and within the discretion of the trial court. We must disagree. The fruits of an illegal wiretap are not admissible, Gelbard v. United States (1972), 408 U.S. 41, 92 S.Ct. 2357, 33 L.Ed.2d 179; and the trial court has no discretion to exercise in the admission of illegally obtained wiretap information. United States v. Cihal, 336 F. Supp. 261 (1972 W.D.Pa.). We therefore find that the trial court committed reversible error when the illegally obtained tape was admitted into evidence.

II.
Wife's second allegation of error charges that reversible error was committed when a deposition (reportedly taken without notice to Wife) was admitted into evidence.
It is unquestioned that no notice was given to Wife prior to Husband taking the deposition of her alleged paramour. It is clear that lack of notice to all parties to an action is a violation of Ind. Rules of Procedure, Trial Rule 30(B)(1) which in pertinent part reads:
"(1) A party desiring to take the deposition of any person upon oral examination shall give reasonable notice in writing to every other party to the action. The notice shall state the time and place for taking the deposition and the name and address of each person to be examined, if known, and if the name is not known, a general description sufficient to identify him or the particular class or group to which he belongs." (Emphasis added).
It is clear that Husband violated the mandate of this rule and that the deposition was not properly taken. This would be so regardless of any actual knowledge which the wife may have possessed, as it is written notice which is required. Associated Transport v. Riss & Co., 8 F.R.D. 99 (N.D. Ohio E.D., 1948), see also 2 Harvey, Indiana Practice 628, Trial Rule 30 (1970).
The uses of a deposition at time of trial or hearing subsequent to the taking of a deposition are controlled by TR. 32 which reads:
"(A) Use of depositions. At the trial or upon the hearing of a motion or an interlocutory proceeding, any part or all of a deposition, so far as admissible under the rules of evidence applied as though the witness were then present and testifying, may be used against any party who was present or represented at the taking of the deposition, by or against any party who had reasonable notice thereof or by any party in whose favor it was given in accordance with any one [1] of the following provisions:
(1) Any deposition may be used by any party for the purpose of contradicting or impeaching the testimony of deponent as a witness.
* * * * * *
(3) The deposition of a witness, whether or not a party, may be used by any party for any purpose if the court finds:
(a) that the witness is dead; or
(b) that the witness is outside the state, unless it appears that the absence of the witness was procured by the party offering the deposition; or
(c) that the witness is unable to attend or testify because of age, sickness, infirmity, or imprisonment; or
(d) that the party offering the deposition has been unable to procure the attendance of the witness by subpoena; or
(e) upon application and notice, that such exceptional circumstances exist as to make it desirable, in the interest of justice and with due regard to the importance of presenting the testimony of witnesses orally in open court, to allow the deposition to be used; or
(f) upon agreement of the parties."
* * * * * *
Even if the deposition had been properly taken it would not fit within any of the permissible uses of a deposition which the Indiana Supreme Court enumerated by adopting TR. 32. The deposition of the alleged paramour of the wife is not admissible into evidence.
*983 It is Husband's contention that the evidence contained in the deposition is merely cumulative and therefore not worthy of reversal. It is true that the vast majority of the paramour's testimony was confirmed by Wife's testimony, and this court will not reverse for admission or refusal of cumulative evidence, Loudermilk v. Feld Truck Leasing Co. of Indiana (1976), Ind. App., 358 N.E.2d 160. However, in light of our resolution as to Issue I, we deem it instructive and necessary to hold that the deposition was improperly taken and was clearly not admissible into evidence.

III.
Appellant's third assertion of error contends that the trial court erroneously refused to rescind the agreed provisional order. Wife contends that the provisional order dated September 30, 1976 (which granted Husband temporary custody of their minor child) was obtained under duress, undue influence, fraud, threat of force and psychological and emotional intimidation. It is Wife's contention that husband exercised such influence and coercion as to remove any free will which she may have possessed which might have enabled her to resist signing the documents.
While the evidence is strong that she may have been influenced by factors which the husband brought to bear on her free will, the evidence is not without conflict. The appellant is therefore requesting we reweigh the evidence and this we will not do. Lake County Council v. Arredondo (1977), Ind., 363 N.E.2d 218. We therefore find no reversible error by the trial court in not rescinding the agreed provisional order.

IV. & V.
The final two issues concern custody of the child of the marriage and division of the marital assets. In light of our holding as to Issues I & II, we deem it unnecessary to discuss the alleged errors presented by Issues IV & V.
Reversed.
ROBERTSON, C.J., and LOWDERMILK, J., concur.