**UNITED STATES of America,**

v.

**Luke J. KUSEK and Hom Gurung, Defendants.**

**No. S 86 Cr. 83 (SWK).**

United States District Court,
S.D. New York.

Nov. 6, 1986.

Buchwald & Kaufman, Attorneys New York City by Don D. Buchwald, for defendant Luke J. Kusek.

Rudolph W. Giuliani, U.S. Atty., S.D. N.Y., New York City by Robert L. Folks, for U.S.

**MEMORANDUM OPINION
AND ORDER**

KRAM, District Judge.

Presently before the Court is defendant Luke J. Kusek's motion to suppress evidence seized from his home pursuant to a search warrant. Kusek argues that the evidence seized was beyond the scope of the search warrant and not admissible under the "plain view" doctrine. *Coolidge v. New Hampshire,* 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971).[1]

On February 23, 1984, Judge Ernest L. Alvino of the Superior Court of New Jersey issued a search warrant authorizing a search of the Kusek residence. The search warrant authorized the search of the Kusek residence for:

---

1. The Court conducted a hearing to resolve factual issues involving the execution of the search. The Court's findings of fact are based on the evidence addressed at the hearing and the July 11, 1986 affirmation of Don Buchwald, and the exhibits attached thereto.

evidence of possession and distribution of controlled dangerous substances and including, but not limited to controlled dangerous substances and related paraphernalia, records, documents and other items relating to the possession and distribution of controlled dangerous substances.

Affirmation of Don. D. Buchwald, Exh. A.

The police officers who executed the warrant seized, among other things, a tape recorder containing one cassette tape, a slip of paper containing the name Joseph Gallacher and his passport number, an airline boarding pass, a response to a visa application, a slip of paper with a quote from Huysmans, and two slips of paper containing the names, bank account numbers, and social security numbers of Anthony and Luke E. Kusek. Kusek claims these items were outside the scope of the search warrant and not immediately apparent to the police as evidence. *Coolidge, supra.* The Government has indicated it will seek to introduce only the tape recorder, the tape, and the airline boarding pass at the trial. The Government also concedes that these items were not within the scope of the warrant, but contends that they are admissible under the plain view doctrine.

The Fourth Amendment requires that a search warrant state with specificity the objects to be seized. *United States v. $10,000 in U.S. Currency,* 780 F.2d 213, 216 (2d Cir.1986). *See Walter v. United States,* 447 U.S. 649, 656, 100 S.Ct. 2395, 2401, 65 L.Ed.2d 410 (1980) (scope of a search is limited by the terms of its authorization). An exception exists, however, for items in "plain view". *Id.* In order for objects not specified in the warrant to be admitted under the plain view doctrine, the police officer must be lawfully on the premises, the discovery of the evidence must be inadvertent, and the incriminating nature of the evidence must be immediately apparent. *United States v. Grubczak,* 793 F.2d 458, 461 (2d Cir.1986). The incriminating nature of an object is immediately apparent when the police have probable cause to believe it is evidence of a crime. *United States v. Ochs,* 595 F.2d 1247, 1258 (2d Cir.), *cert. denied,* 444 U.S 955, 100 S.Ct. 435, 62 L.Ed.2d 328 (1979). In this case, the defendants have placed only the third element of the plain view doctrine—that the criminal nature of the evidence be immediately apparent—in issue.

The evidence indicates that the New Jersey police officers who executed the search warrant knew that the alleged drug conspiracy involved international travel and dealing with individuals in Nepal. The cassette that the police found in the Kusek residence contained a recording of a telephone call between defendant Luke J. Kusek, who was, at the time of the recording, in New Jersey, and his son Luke E. Kusek, who was in Kathmandu, Nepal. The cassette contained no markings or writing of any kind. Police learned of its contents only after playing it. The airline boarding pass found by the police during their search lists Philadelphia as the origin and London as the destination. During the search the police also found cash in the amount of $45,000, scales, and marijuana.

■ Regarding the airline boarding pass, the police knew that the investigation of Kusek involved allegations of international drug dealing. Thus, the police had probable cause to believe that the boarding pass was evidence of a crime, and it is admissible under the plain view doctrine.

■ The admissibility of the cassette and the tape recorder, however, presents a more difficult question. The Court begins by noting that the defendant does not challenge the playing of the tape without a warrant. *See United States v. Bonfiglio,* 713 F.2d 932 (2d Cir.1983); *United States v. Castellano,* 610 F.Supp. 1359, 1437–38 (S.D.N.Y.1985). Rather, defendant claims that the police did not have probable cause to believe that the tape was evidence of a crime, and thus could not have seized it in the first place, much less play it. *See Ochs, supra,* 595 F.2d at 1257–58 (when police see suspicious object in plain view,

they may test their suspicion proceeding with a limited inspection of the object).

· *Bonfiglio, supra,* provides guidance as to when an inference of criminality from a cassette tape is justified. In *Bonfiglio,* an agent of the Bureau of Alcohol, Tobacco, and Firearms obtained a warrant to search Bonfiglio's residence for a specific rifle. In executing the search, the agent seized an envelope marked "Tap on Ben Bon Hoft". Inside the envelope was a cassette tape marked "Ben". The agent played the tape the next day, and found that it contained a recording of a conversation between Bonfiglio and his co-defendant. The Second Circuit ruled that the tape was legally seized under the plain view doctrine. The court ruled that the inscription on the envelope gave the police probable cause to believe the tape contained evidence of a crime, as non-consensual wiretapping is illegal under federal law. The court also ruled that the context in which the cassette was found, under a floorboard and next to a rifle, handguns, and other suspicious items, justified an inference that the tape was evidence of a crime. *Id.* at 936.

Other cases in which courts have admitted cassette tapes pursuant to the plain view doctrine also indicate that tangible evidence of criminality is required to support a belief of probable cause that a cassette is evidence of a crime. *See United States v. Falcon,* 766 F.2d 1469, 1476 (10th Cir.1985) (tape found near kidnapping tools and a telephone recording device to which defendant's business cards were taped); *United States v. Rizzo,* 583 F.2d 907, 910 (7th Cir.1978), *cert. denied,* 440 U.S. 908, 99 S.Ct. 1216, 59 L.Ed.2d 456 (1979) (defendant allegedly was involved in illegal wiretap activities); *Castellano, supra,* 610 F.Supp. at 1436–38 (S.D.N.Y.1985) (police, who had order to seize and inventory the contents of alleged house of prostitution, discovered voice activated recorders connected to telephone, and observed one of the devices recording a phone conversation).

In the instant case, there is absolutely no evidence that the police had probable cause to believe that the cassette tape was evidence of a crime. Nor is the crime one which might naturally involve tape recordings. The tape contained no markings and was not discovered near other suspicious items. Nothing about the outward appearance of the tape indicated that it contained records of drug dealing. *United States v. Gazzara,* 587 F.Supp. 311, 328–29 (S.D.N.Y.1984). The police had no reason to believe that Kusek recorded his phone conversations involving his alleged drug dealing, nor is there any evidence that the police knew from their expertise that drug dealers often record their phone conversations.

It is clear that the incriminating nature of the tape became apparent only after it was played by the police. However, in the absence of any basis for believing that the tape was incriminating, the police were not justified in playing the tape to determine the nature of its contents. *See United States v. Berenguer,* 562 F.2d 206, 210–11 (2d Cir.1977) (examination of billfold, which offered no immediately apparent evidence of an inculpatory nature, is not justified). Accordingly, the cassette tape and the recorder must be suppressed.

SO ORDERED.

### ON MOTION TO EXCLUDE

■ Presently before the Court is defendant Luke J. Kusek's motion to exclude from his trial statements allegedly made by former co-defendant Carl Morgan on February 23, 1984, May 8, 1984, and January 19, 1986; to exclude from his trial evidence of Morgan's January 19, 1986 arrest and dealings with Udaya Thakur; and for a severance of his trial from Carl Morgan or, alternatively, a severance of the trial of Counts One and Two from the trial of Counts Three and Four, in which Morgan alone is named. After the motion was submitted, defendant Carl Morgan has pleaded guilty, rendering moot Kusek's motion for a separate trial or for a severance of the counts.

The indictment in this case contains four Counts. Only Morgan is named in Counts Three and Four. Counts One and Two allege that from on or about January 1, 1978 until January 18, 1986, Carl Morgan, Hom Gurung, Luke J. Kusek, and Luke E. Kusek conspired to distribute and import heroin. The overt acts charged under each conspiracy are the same. Among them are allegations that Luke E. Kusek went to Kathmandu, Nepal, that Udaya Thakur spoke to Carl Morgan over the telephone on January 17, 1986, and that on January 19, 1986, Carl Morgan went to a hotel in New York City.

Kusek claims that at trial, the Government intends to introduce evidence that since late 1983, the Delaware police had been conducting an investigation of defendant Carl Morgan's alleged drug dealing activities. As part of this investigation, on February 22, 1984, the Delaware police observed Morgan and Luke J. Kusek drive separately from their homes to Kennedy Airport. There, they met Luke E. Kusek (defendant Luke J. Kusek's son) who had just disembarked from a flight from Nepal. Morgan also met two Nepalese men who had been on the same flight. The two men put their luggage in Morgan's trunk. The elder Kusek, Morgan, and the two Nepalese men then left together in the same car. The younger Kusek and his mother left in a separate car, and drove to their home in New Jersey. On February 23, 1984, the Delaware State Police arrested Carl Morgan. *See* affirmation of Don D. Buchwald, dated July 10, 1986, ¶ 9.

According to Kusek, the United States will seek to introduce Morgan's February 23 post-arrest statement to the police in which he allegedly admitted going to Kennedy Airport with Luke J. Kusek the day before and meeting two males. He allegedly further stated that the men were friends of his and that the $22,500 the police found in his trunk belonged to a friend.

Morgan made the second statement the government intends to introduce against Kusek on May 8, 1984, when Morgan went to the Delaware police station to pick up some of his property which had been seized pursuant to a search warrant. During the course of a conversation with the police, Morgan allegedly stated, "I did what I did." He also allegedly asked what would happen to the younger Kusek who had also been arrested. The police officer indicated he thought the younger Kusek would probably receive a lighter sentence and he criticized the elder Kusek for using his son in his drug operation. Morgan allegedly agreed.

Finally, the United States intends to offer a videotape of a meeting on January 19, 1986, between Morgan and Udaya Thakur, who was then acting as a government informant. During the conversation, Morgan allegedly described his trial strategy in the Delaware case and his version of the airport surveillance of himself and the Kuseks.

Kusek argues that Morgan's February 23, 1984 and May 8, 1984 post-arrest statements to the police are inadmissible against him. First, Kusek argues that since the statements were post-arrest statements made to the police, they were not "during the course and in furtherance" of the alleged conspiracy, Fed.R.Evid. 801(d)(2)(E), and hence inadmissible as hearsay. Second, Kusek argues that even if the statements were made during the course of and in furtherance of the conspiracy, introduction of the statements against him would violate the Confrontation Clause of the Sixth Amendment to the United States Constitution.

As an initial matter, a co-conspirator's statements can be admitted against a defendant if the government can show by a preponderance of the non-hearsay evidence that a conspiracy existed, that the defendant and declarant were members of it, that the statement was made during the course of the conspiracy, and that the statement was made in furtherance of the conspiracy. *United States v. Katsougrakis*, 715 F.2d 769, 778 (2d Cir.1983), *cert. denied,* 464

U.S. 1040, 104 S.Ct. 704, 79 L.Ed.2d 169 (1984); *United States v. Geaney*, 417 F.2d 1116, 1120 (2d Cir.1969), *cert. denied*, 397 U.S. 1028, 90 S.Ct. 1276, 25 L.Ed.2d 539 (1970). Generally, a trial court will admit a co-conspirator's statement subject to connection with the conspiracy, and makes the appropriate finding as to conn ction at the close of the Government's case. Here, Kusek asks the Court to decide prior to trial that, as a matter of law, Morgan's February 23, 1984 and May 8, 1984 statements were not made during the course of and in furtherance of the conspiracy.

The Government responds that it intends to prove that although Morgan was arrested in 1984, the conspiracy charged in this case continued until January, 1986. Although in certain circumstances, an arrest ends a co-conspirator's participation in the conspiracy, that is not necessarily the case here. Morgan remained free after his arrest, and his statements to the police do not indicate that the conspiracy's objects had been met or that they were over. Thus, the Court cannot determine until trial whether the conspiracy continued after Morgan's arrest.

The Court is unwilling to find as a matter of law that Morgan's February 23, 1984, statement was not in furtherance of the conspiracy. The statement is exculpatory, giving an innocent explanation of the trip to Kennedy Airport. It can also be construed as an attempt to preserve the conspiracy. The statement is thus admissible subject to connection.

On the other hand, Morgan's May 8, 1984 statement is not, on its face, in furtherance of the conspiracy. However, a separate grounds is available to support the admissibility of this statement. Under Fed.R.Evid. 804(b)(3), a statement against a declarant's penal interest is admissible against a co-conspirator at his trial, as long as the declarant is unavailable to testify. *United States v. Lieberman*, 637 F.2d 95, 103 (2d Cir.1980). A ruling as to whether the testimony is admissible under Rule 804(b)(3) must await trial to determine whether

Morgan is unavailable, whether the statement was against Morgan's penal interest, and whether the statement was sufficiently trustworthy.

Kusek's second argument regarding Morgan's February 23, and May 8, 1984 statements is that their introduction at a joint trial of Morgan and Kusek would violate the Confrontation Clause. However, Morgan has pleaded guilty in this case. As part of the plea agreement, the charges against Morgan in Delaware will be dropped. Therefore, Morgan might be available to testify against Kusek, resolving any Confrontation Clause objections.

The Court cannot determine now whether Morgan will be available to testify as to his statements during the Government's case or on cross-examination. See Fed.R. Evid. 806. Even assuming, that Morgan will refuse to testify, the Court must await trial before it can determine that the Confrontation Clause would prohibit introduction of his statements against Kusek. Based upon the showing thus far, the statements are supported by independent indicia of reliability such as surveillance reports which corroborate Morgan's description of the trip to Kennedy Airport. Furthermore, Morgan's statements do not clearly implicate Kusek in any criminal activity. They incriminate Morgan more deeply than Kusek. The February 23 statement is an innocent explanation of Morgan's and Kusek's trip to Kennedy Airport. The May 8 statement about Kusek is simply a discussion about a pending indictment against Morgan and the Kuseks. Morgan himself did not criticize Kusek for using his son to help him. The police officer did so, and also said the younger Kusek would probably get a lighter sentence. Morgan's agreement is vague and non-committal.

Kusek argues that Morgan's statements to Thakur on January 19, 1986, are inadmissible against him because they constitute a narrative of the Delaware case and his and Kusek's trip to Kennedy Airport. Thus, Kusek argues, the statements are

hearsay, and not admissible under Fed.R. Evid. 801(d)(2)(E). *See United States v. Birnbaum*, 337 F.2d 490 (2d Cir.1964). These statements, however, may be construed as an attempt to reassure Thakur that he would receive his share of the proceeds from the drug sales, and to convince him to remain a part of the conspiracy.

Kusek also argues that there is no evidence linking Kusek to Thakur. In both Counts One and Two of the indictment, however, Morgan's dealings with Thakur on January 17 and January 19, 1986, are charged as overt acts. Morgan's statements to Thakur are thus admissible subject to connection with the conspiracy charged in Counts One and Two.

In summary, Morgan's February 23, 1984 statement to the police is admissible against Kusek subject to connection with the conspiracy charged in Counts One and Two of the indictment. Although the Court is skeptical that Morgan's May 8, 1984 statement can be connected to the conspiracy, the Court will admit it subject to connection. Alternatively, if the Government cannot show a connection, the statement may be admitted under Fed.R. Evid. 804(b)(3). This determination, however, awaits trial. Similarly, it appears that the Confrontation Clause will not bar admission of these statements. This ruling, again, is subject to amendment depending on the evidence adduced at the trial. Finally, Morgan's January, 1986 statements to Thakur are admitted subject to connection with the charged conspiracy.

SO ORDERED.